**Everett LYON, Petitioner-Appellant,**

v.

**STATE of Iowa, Respondent-Appellee.**

No. 86–528.

Court of Appeals of Iowa.

Feb. 25, 1987.

Charles L. Harrington, Appellate Defender, and Michael J. Laughlin, Asst. Appellate Defender, for petitioner-appellant.

Thomas J. Miller, Atty. Gen., and John M. Parmeter, Asst. Atty. Gen., for respondent-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

The petitioner appeals from the trial court's dismissal of his application for post-conviction relief, challenging a prison reprimand imposed on him after being found guilty of violating penitentiary rules. The petitioner contends that the trial court erred in dismissing his application. He argues that since a reprimand could result in a future delay of parole release, it constitutes a substantial deprivation of a liberty interest and is reviewable in an application for postconviction relief. We affirm.

On February 25, 1985, a prison disciplinary committee found the petitioner, an inmate at the Fort Madison Penitentiary, guilty of violating four penitentiary rules and imposed a penalty of ten days disciplinary detention, loss of good and honor time, and fifteen days of administrative segregation. The warden then reduced the petitioner's penalty to a reprimand on appeal. On April 1, 1985, the petitioner filed an application for postconviction relief, challenging the reprimand. The respondent filed a motion to dismiss petitioner's application on May 2, 1985, and petitioner filed a resistance to the respondent's motion on May 16, 1985. On April 3, 1986, the trial court sustained the respondent's motion to dismiss based on its conclusion that a reprimand alone does not constitute the substantial deprivation of rights necessary for review of an application for postconviction relief.

The petitioner contends that the trial court erred in dismissing his application for postconviction relief on the grounds that a reprimand is not reviewable. The petitioner argues that since a parole board can inspect an inmate's conduct and attitude in prison, a reprimand could lead to a delay in parole. Since the reprimand could lead to a future delay in parole, the petitioner maintains that it constitutes a substantial deprivation of a liberty interest, reviewable in an applicable for postconviction relief. The petitioner requests that the trial court's dismissal be reversed and his application for postconviction relief reinstated.

The States replies that the petitioner is ineligible for parole since he was convicted of first-degree murder, a Class A felony. Moreover, the State contends that neither state nor federal law creates a protective liberty interest in obtaining a parole release. Finally, the State argues that since a reprimand has only a tangential, if any, effect on a parole decision, it does not constitute a substantial deprivation of a liberty interest.

Our scope of review is limited to the correction of errors at law. Iowa R.App.P. 4. The trial court's findings of fact in a law action are binding upon this court if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We are not, however, bound by the trial court's determination of law. *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa App.1979).

The petitioner argues that since loss of good time is a liberty or property interest which is reviewable in an action for postconviction relief, a reprimand should likewise be considered a substantial punishment affecting a liberty or property interest reviewable in an action for postconviction relief. We disagree.

In *Davis v. State*, 345 N.W.2d 97, 99 (Iowa 1984), the Iowa Supreme Court departed from an earlier position enunciated in *Allen v. State*, 217 N.W.2d 528, 531 (Iowa 1974), and held that actions of prison officials which involve a substantial deprivation of a liberty or property interest are reviewable by action for postconviction re-

lief. In *Davis*, the defendant, who had participated in the murder of a fellow inmate, was penalized by being put in administrative segregation for 36 months and also lost his television, radio, and tape-playing privileges. 345 N.W.2d at 98. In departing from the standards set forth in *Allen*, the Iowa Supreme Court stated:

> In many of the prison disciplinary proceedings in which judicial review will be sought, forfeiture of good and honor time will be involved but will be coupled with other means of discipline which can be characterized as a substantial deprivation of liberty or property but which are not expressly mentioned as a subject for review under chapter 663A. We therefore approve litigating all such claims involving substantial deprivation of liberty or property interests pursuant to the procedures of chapter 663A in the county in which the applicant is being confined.

*Id.* at 99.

Under the *Davis* rationale, a prison disciplinary proceeding which substantially deprives an inmate of a liberty or property interest may be reviewed in a postconviction proceeding pursuant to Iowa Code chapter 663A (1985). The key word, however, is *substantial.* We do not read the holding in *Davis* to include *every* form of disciplinary proceedings which may tangently affect the liberty or property interests of an inmate.

It is without question that the Due Process Clause applies when government action deprives a person of liberty or property. Though the regime under which a person is lawfully incarcerated necessarily makes unavailable the full panoply of rights and privileges afforded to ordinary citizens, the prisoner may not totally be stripped of constitutional protections when he or she is imprisoned. *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935, 950 (1974). However, because prison disciplinary proceedings are not part of the process of a criminal prosecution, the broad spectrum of rights due a defendant in such proceedings do not apply. 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951.

It has been recognized that a "state created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 463, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158, 164 (1981). The underlying right, however, must come into existence before the due process protections can be triggered. *Id.* Whether any procedural protections may be due depends on the extent to which an individual will be "condemned to suffer grievous loss." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). The crucial question in a due process claim is not merely what weight is afforded an individual's liberty or property interest, but whether the nature of that interest is within the contemplation of the language of the fourteenth amendment of the United States Constitution and our own due process provisions in Article I of the Iowa Constitution. *Id.*

Once due process applies, the question remains as to what process is due. In making that determination, we must look to the precise nature of the governmental function involved as well as the individual interest affected. *Clark v. Brewer*, 776 F.2d 226, 232 (8th Cir.1985); *State v. Grimme*, 274 N.W.2d 331, 336 (Iowa 1979). We must keep in mind, however, that in order to obtain this right and the attendant procedural safeguards, the party claiming such right must have not merely a unilateral expectation of it, but rather a legitimate claim of title to it. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)).

In those cases in which the courts have determined that a prisoner's property or liberty have been infringed upon, it is important to note that the key element in concluding that a prisoner's rights had been violated was that the State, through its statutory, administrative, and institutional policy-making schemes, expressly created a liberty or property interest to

which a prisoner had a legitimate entitlement. *See Wolff v. McDonnel,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974) ("... the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures ... required by the Due Process Clause...."); *Clark v. Brewer,* 776 F.2d 226, 230–31 (8th Cir.1985) (where the court held that pursuant to statutory, administrative, and institutional policies, the State of Iowa had created a liberty interest in close management segregation); *Davis v. State,* 345 N.W.2d 97, 99 (Iowa 1984) (Iowa Supreme Court held that administrative segregation is a disciplinary action which substantially affects an inmate's liberty or property interest).

Unlike the loss of good and honor time and administrative segregation, disciplinary situations in which a clearly and readily identifiable liberty or property interest is affected, a reprimand under the Iowa State Penitentiary policy rules results in no good or honor time taken away, nor is other punishment rendered coinciding with the order for a reprimand. The prisoner does not lose any of the privileges granted under the prison rules. The petitioner, however, states that the reprimand, if allowed to stand, would remain on his prison record and possibly affect his future eligibility for parole. It is apparently petitioner's argument that his expectations of parole are a protected liberty interest included within the parameters of the Due Process Clause. We find no merit in petitioner's argument.

The petitioner in the present case is presently serving a life sentence for first-degree murder. Pursuant to Iowa Code section 902.1 (1985), no person convicted of a class "A" felony shall be released on parole unless the governor commutes the sentence to a term of years. Section 902.2 provides that within five years of the class "A" felon's confinement, the parole board shall interview such felon. If, within the board's opinion, the felon should be considered for release on parole, the board shall recommend to the governor that the felon's sentence be commuted to a term of years. Iowa Code § 902.2. Thus, pursuant to Iowa statutory law, the petitioner is not eligible for parole. Petitioner's only hope of being eligible for parole is based on whether, in his discretion, the governor decides to commute petitioner's sentence.

While the petitioner may have an expectation that he may someday be released, the natural desire to be released is in no way different from the initial resistance to be confined. *Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2104, 60 L.Ed.2d at 675. Once a valid conviction has been entered, the defendant has been constitutionally deprived of his liberty to be conditionally released. *Id.* Moreover, an inmate has no constitutional or inherent right to a commutation of his sentence. *Dumschat,* 452 U.S. at 464, 101 S.Ct. at 2464, 69 L.Ed.2d at 165. Additionally, the relevant Iowa statutes provide for a relatively-unfettered discretion in the parole board and the governor when making a decision concerning parole or commutation of sentence. *See* Iowa Code §§ 902.-1, 902.2 (1985); *see also* Iowa Code §§ 248.6–.10 (1985); 615 Iowa Administrative Code § 4.2. No substantive predicates are placed upon the governor's discretion in granting a commutation of sentence. An inmate's conduct is one of only eight areas considered by the parole board, such as the circumstances of the person's offense, previous social history, physical and mental examinations, employment, and prison attitude. Iowa Code § 906.5 (1985). A minor reprimand would therefore be only one factor involving many in the parole or commutation decision.

We therefore conclude that a reprimand is not a substantial deprivation of a liberty or property interest protected under the Due Process Clause. To hold otherwise would require the courts to become enmeshed in many of the daily disciplinary decisions rendered by prison officials, since all pertinent information regarding a prisoner's conduct in prison could be said to in some way influence a decision in granting or denying parole or commutation of sentence. Where a state has specifically cre-

ated certain rights and procedures concerning a liberty or property interest of an inmate, thereby creating a prisoner's legitimate expectation in that right, the deprivation of that right by prison officials will implicate due process. Where, however, a disciplinary decision affects only the inmate's mere expectancy of being released, such expectancy not being constitutionally protected, no liberty or property interests protected by due process are involved. We therefore hold that the district court did not err in dismissing the petitioner's application for postconviction relief.

AFFIRMED.

SACKETT, J., concurs.

SCHLEGEL, J., dissents.

SCHLEGEL, Judge (dissenting).

I must respectfully dissent. For purposes of this appeal, we must assume that the reprimand was unjustified. In ruling upon a motion to dismiss, petitioner's allegations must be taken as true, and the court must find that under those allegations, there is no possibility that the petitioner can be entitled to the relief prayed for. *Warford v. Des Moines Metropolitan Transit*, 381 N.W.2d 622, 623 (Iowa 1986). Under that assumption, I cannot agree that a reprimand which may ultimately have an effect upon whether a sentence is commuted to a term of years thereby making a prisoner eligible for parole, is not a substantial deprivation of a liberty or property interest protected under the Due Process Clause. *See Davis v. State*, 345 N.W.2d 97, 99 (Iowa 1984). The majority seems to feel that since petitioner is serving a life sentence under which, without some other intervention there is no possibility of parole, his chances of commutation and parole are so remote that creating an improper bad mark on his record is not likely to have much of an effect upon his freedom in the future.

I submit that to damage the only chance that a life term prisoner has for future freedom, however remote, is the single most substantial deprivation of a liberty or property interest. The worst-case scenario, which I think we must employ, would leave unreviewed those unjustified black marks upon a prisoner's record when that prisoner was making every effort to be a model prisoner and strive for a future chance to be a model citizen. Section 902.2, Code of Iowa, suggests that even the lifer should be considered for commutation and parole. To be sure, such commutation is in the discretion of the governor. It is unlikely that the governor would commute a life sentence without the recommendation of the board of parole.

The majority states: "An inmate's conduct is one of only eight areas considered by the parole board, such as the circumstances of the persons offense, previous social history, physical and mental examinations, employment, and prison attitude. Iowa Code § 906.5 (1985). A minor reprimand would therefore be only one factor involving many in the parole or commutation decision." I submit that a reprimand, when it is unjustified, places a potentially erroneous picture of the inmate's conduct, and "prison attitude" before the parole board, and cannot be downplayed by the conclusion of the majority that it is "minor." On this record, we don't know whether it is "minor" or not. Any reprimand that is not proper or justified cannot be minor. We need to have a determination on judicial review not whether it is minor or major, but whether it is justified at all.

I would hold that the dismissal of the petitioner's appeal deprived him of his due process rights, and would reverse and remand this case to the trial court for a determination on the merits of the petition.